**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
Dennis Durban,

<em>Plaintiff</em>,

- against -

Jordan DeCiccio, Jake DeCiccio, Jimmy DeCiccio,
Sunniva Caffe Inc., Sunniva Management, LLC,
Kitu Life, Inc., Kitu Super Brands, Inc., and John
Doe Corporations 1-5,

<em>Defendants</em>.

-------------------------------------------------------------X

Case No.:

**Jury Trial Demanded**

**<u>COMPLAINT</u>**

   Plaintiff Dennis Durban ("**Plaintiff**" or "**Durban**"), by and through his attorneys, Levin-Epstein & Associates, P.C., upon personal knowledge, brings this complaint against Defendants Jordan DeCiccio ("**Jordan**"), Jake DeCiccio ("**Jake**"), Jimmy DeCiccio ("**Jimmy**", and together with Jordan and Jake, the "**Individual Defendants**", or the "**DeCiccio Brothers**"), Sunniva Caffe Inc. ("**Sunniva Caffe**"), Sunniva Management, LLC ("**Sunniva Management**"), Kitu Life, Inc. ("**Kitu Life**"), Kitu Super Brands, Inc. ("**Kitu Super Brands**"), and John Doe Corporations 1-5 (the "**John Doe Defendants**", and together with Sunniva Café, Sunniva Management, Kitu Life and Kitu Super Brands, the "**Corporate Defendants**", and collectively with the Individual Defendants, the "**Defendants**") and states as follows:

<strong>NATURE OF THE ACTION</strong>

   1.  This action arises out of the DeCiccio Brothers breach of an oral agreement made to Durban that he had earned a 1% equity share of the DeCiccio Brothers' start-up coffee and consumable brand known as Sunniva Caffe.  When the DeCiccio Brothers had conceived of the idea for Sunniva Caffe, the DeCiccio Brothers were in their early 20s, had never started a business, and had no experience in launching a consumable products brand. The DeCiccio Brothers solicited

1

Durban to work for Sunniva Café because of his twenty-five-year experience starting successful consumer brands and expertise in the consumer products industry. Based on the DeCiccio Brothers' agreement for a 1% earned equity interest in Sunniva Caffe, Durban performed work and services for Sunniva Café.

2.     From approximately March 2015 through and including August 2016,  Durban advised the DeCiccio Brothers, made strategic business introductions, vetted proposals, and worked on Sunniva Caffe's business strategy, all based on the DeCiccio Brothers agreement of an earned 1% equity interest in Sunniva Caffe.

3.     It is undeniable that Durban worked for and contributed to the early growth of Sunniva Café.  He is listed in the "Sunniva Caffe Business Plan" as the "Chief Experience Officer." The "Sunniva Caffe Business Plan" lauded Durban, as follows:

> Dennis has an impressive track record of launching successful consumer brands. He has an extensive network that reaches a seemingly limitless number of platforms including: retail, food services, sports, hospitality, healthcare, e-commerce, private label and many more. In 2013, Dennis launched innovation.biz, whose goal is to help consumer product companies get created and then get launched. Dennis has specialized in the functional beverage industry since 1989, when he began working with Nestle, in which he was responsible for retail formats, distributor management processes and asset management strategies. From Nestle, he also has expertise in distributor management, asset management, retail channel consulting, web development, trade marketing and more. Most impressively, while at Nestle, Dennis set up a business development team that targeted non-traditional retailers, responsible for $100 million in new business! **Dennis was named the Chief Experience Officer [of Sunniva Café] in May 2015**.

4.     Furthermore, in numerous email communications, the DeCiccio Brothers refer to Durban and held Durban out to third-parties as a "**partner[]**"and/or and "**advisor**."  For example, in an email dated April 6, 2016, Jordan copied Durban on an email to a third-party consultant, as follows:

[**REDACTED**],

It's nice meeting you. Dennis has told me some great things.

**Dennis has been 1 of our advisors here at Sunniva Caffe since the very beginning.** He says you're a big coffee guy and know the industry inside and out.

I would love to get your take on our brand and our growth plans as we see a great opportunity in the Food Service industry with The Compass group. If you have some time to jump on a call this week, that would be fantastic.

Thanks for the time and talk soon.

Best,

(emphasis added).

5.      The DeCiccio Brothers reneged on the deal that granted Durban a 1% equity interest in Sunniva Café even though Durban had performed. Durban never received a dollar for work performed between March 2015 through and including August 2016.

6.      Durban thus brings this action against Defendants for the value of his 1% share of Sunniva Caffe, or in the alternative claims sounding in unjust enrichment/*quantum meruit*, and for related relief.

## JURISDICTION AND VENUE

7.       This Court has subject matter jurisdiction based on diversity pursuant to 28 U.S.C. § 1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. As set forth more fully below, Plaintiff is a citizen of Nevada and Defendants are citizens of New York.

8.      The Court also has subject matter jurisdiction of this case pursuant 28 U.S.C. § 1337.

9.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)

and (c), because the Individual Defendants reside in the Southern District of New York, and because the Corporate Defendants maintain their principal place of business in the Southern District of New York.

## THE PARTIES

**PLAINTIFF DURBAN**

10.     Plaintiff Durban is a resident of Las Vegas, Nevada. Durban is the founder of Conzumables, a global platform that specializes in launching consumer product companies. Durban has specialized in consumer product goods in the food & beverage industry since 1985, with major roles with Coca Cola and with Nestlé Corporate (in multiple management roles), where he oversaw retail, distributor management, and asset management strategies.  Over the past 12-years, Conzumables has been an advisory group supporting a long-list of successful brands, a number that are well-known today.

11.     At all relevant times, Plaintiff has been an employee within the meaning of New York Labor Law §§ 190(2) and 651(5) and 12 NYCRR § 146-3.2, from March 2015 through and including August 2016.

12.     Plaintiff was hired to, *inter alia*:

a.      Serve as Sunniva's advisor, and Chief Experience Officer;

b.      Source manufacturing, co-packing and distribution partners;

c.      Source retailer and wholesaler accounts;

d.      Source strategic partnerships with similarly situated brands;

e.      Draft presentation decks;

f.      Provide advisory and consulting services;

g.      Leverage network connections in the consumer products industry; and

h.     Engage senior-level consultants and advisors;

**DEFENDANT JORDAN DECICCIO**

13.     Defendant Jake DeCiccio is an individual residing in New York, New York and controls directly or indirectly the Corporate Defendants and/or certain of the John Doe Defendants which will be identified through discovery.

14.     Defendant Jordan DeCiccio is sued individually and in his capacity as an owner, officer and/or agent of the Corporate Defendants.

15.     Defendant Jordan DeCiccio possesses or possessed operational control over the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

16.     Defendant Jordan DeCiccio determined the wages and compensation of employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

17.     At all times relevant to this Complaint, Defendant Jordan DeCiccio was and is an employer within the meaning of NYLL §§ 190(3) and 651(6), and employed employees, including Plaintiff.

**DEFENDANT JAKE DECICCIO**

18.     Defendant Jake DeCiccio is an individual residing in New York, New York and controls directly or indirectly the Corporate Defendants and/or certain of the John Doe Defendants which will be identified through discovery.

19.     Defendant Jake DeCiccio is sued individually and in his capacity as an owner, officer and/or agent of the Corporate Defendants.

20.     Defendant Jake DeCiccio possesses or possessed operational control over the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

21.     Defendant Jake DeCiccio determined the wages and compensation of employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

22.     At all times relevant to this Complaint, Defendant Jake DeCiccio was and is an employer within the meaning of NYLL §§ 190(3) and 651(6), and employed employees, including Plaintiff.

**DEFENDANT JIMMY DECICCIO**

23.     Defendant Jimmy DeCiccio is an individual residing in New York, New York and controls directly or indirectly the Corporate Defendants and/or certain of the John Doe Defendants which will be identified through discovery.

24.     Defendant Jimmy DeCiccio is sued individually and in his capacity as an owner, officer and/or agent of the Corporate Defendants.

25.     Defendant Jimmy DeCiccio possesses or possessed operational control over the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

26.     Defendant Jimmy DeCiccio determined the wages and compensation of employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

27.     At all times relevant to this Complaint, Defendant Jimmy DeCiccio was and is an employer within the meaning of NYLL §§ 190(3) and 651(6), and employed employees, including Plaintiff.

**DEFENDANT SUNNIVA CAFFE INC.**

28.     Upon information and belief, Defendant Sunniva Caffe Inc. was and is a domestic corporation organized and existing under the laws of the State of Virginia.

6

29.     Upon information and belief, Defendant Sunniva Caffe Inc. was an entity set up by the DeCiccio Brothers that was dissolved subsequent to the rebranding of the "Sunniva Café" brand to "KITU".  Upon information and belief, Kitu Life, Inc., Kitu Super Brands, Inc., and the John Doe Defendants are the successors-in-interest to Sunniva Caffe Inc., and Sunniva Management LLC.

30.     At all times relevant to this Complaint, Defendant Sunniva Caffe Inc. was and is a covered employer within the meaning of NYLL §§ 190(3) and 651(6), and employed employees, including Plaintiff.

31.     At all times relevant to this Complaint, Defendant Sunniva Caffe Inc. was and is an employer within the meaning of NYLL §§ 190(3) and 651(6), and employed employees, including Plaintiff.

**DEFENDANT SUNNIVA MANAGEMENT LLC**

32.     Upon information and belief, Defendant Sunniva Management LLC was and is a domestic corporation organized and existing under the laws of the State of Delaware.

33.     Upon information and belief, Defendant Sunniva Management LLC was an entity set up by the DeCiccio Brothers that was dissolved subsequent to the rebranding of the "Sunniva Café" brand to "KITU".  Upon information and belief, Kitu Life, Inc., Kitu Super Brands, Inc., and the John Doe Defendants are the successors-in-interest to Sunniva Caffe Inc., and Sunniva Management LLC.

34.     At all times relevant to this Complaint, Defendant Sunniva Management LLC was and is a covered employer within the meaning of NYLL §§ 190(3) and 651(6), and at all times relevant to this Complaint, employed employees, including Plaintiff.

35.     At all times relevant to this Complaint, Defendant Sunniva Management LLC was

and is an employer within the meaning of NYLL §§ 190(3) and 651(6), and employed employees, including Plaintiff.

**DEFENDANT KITU LIFE, INC.**

36.     Upon information and belief, Defendant Kitu Life Inc. was and is a domestic corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1732 First Avenue, New York, NY 10128.

37.     At all times relevant to this Complaint, Defendant Kitu Life Inc. was and is a covered employer within the meaning of NYLL §§ 190(3) and 651(6), and, at all times relevant to this Complaint, employed employees, including Plaintiff.

38.     At all times relevant to this Complaint, Defendant Kitu Life Inc. was and is an employer within the meaning of NYLL §§ 190(3) and 651(6), and employed employees, including Plaintiff.

**DEFENDANT KITU SUPER BRANDS, INC**.

39.     Upon information and belief, Defendant Kitu Super Brands, Inc. was and is a domestic corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1732 First Avenue, New York, NY 10128.

40.     At all times relevant to this Complaint, Defendant Kitu Super Brands, Inc. was and is a covered employer within the meaning of NYLL §§ 190(3) and 651(6), and, at all times relevant to this Complaint, employed employees, including Plaintiff.

41.     At all times relevant to this Complaint, Defendant Kitu Super Brands, Inc. was and is an employer within the meaning of NYLL §§ 190(3) and 651(6), and employed employees, including Plaintiff.

**DEFENDANT JOHN DOE CORPORATIONS 1-5**

42.    The John Doe Defendants are entities or persons not presently known to Plaintiff but who were organized for the purpose of operating or assisting with the operation of Kitu.

43.    The true names of the John Doe Defendants are unknown to Plaintiff at this time, and Plaintiff will seek leave to amend this Complaint to state their true names when they have been ascertained.

**DEFENDANTS CONSTITUTE JOINT EMPLOYERS**

44.    Defendants own, operate and/or control a fast-growing consumer goods company headquartered in New York, New York.

45.    The Individual Defendant possesses operational control over the Corporate Defendant, possesses an ownership interest in the Corporate Defendant, and control significant functions of the Corporate Defendant.

46.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

47.    Each Defendant possessed substantial control over Plaintiff's working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff.

48.    Defendants jointly employed Plaintiff, and are Plaintiff's employers within the meaning of NYLL §§ 190(3) and 651(6).

49.    In the alternative, Defendants constitute a single employer of Plaintiff.

50.    Upon information and belief, the Individual Defendants operate the Corporate Defendant as either an alter ego of themselves, and/or fails to operate the Corporate Defendants as entities legally separate and apart from themselves, by, among other things:

9

a.    failing to adhere to the corporate formalities necessary to operate the Corporate Defendants as a separate and legally distinct entity;

b.    defectively forming or maintaining the Corporate Defendants, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

c.    transferring assets and debts freely as between all Defendants;

d.    operating the Corporate Defendants for their own benefit as the majority shareholders;

e.    operating the Corporate Defendants for their own benefit and maintaining control over it as a closed corporation or closely controlled entity;

f.    intermingling assets and debts of their own with the Corporate Defendants;

g.    diminishing and/or transferring assets of the Corporate Defendants to protect their own interests; and

h.    other actions evincing a failure to adhere to the corporate form.

51.    At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL §§ 190(3) and 651(6).

52.    Defendants had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

## FACTUAL ALLEGATIONS

### A. The DeCiccio Brothers Solicit Durban to Work for Sunniva Caffe Based on an Agreement for an Earned 1% Equity Interest in Sunniva Caffe

53.    When the DeCiccio Brothers had conceived of the idea for Sunniva Caffe, the DeCiccio Brothers were in their early 20s and had no experience in launching a consumable

products brand.

54.     The DeCiccio Brothers solicited Durban to work for Sunniva Café because of his twenty-five-year experience starting successful consumer brands and expertise in the consumer products industry.

55.     In an email to Durban dated March 1, 2015, Jordan stated:

Hi Dennis,

I am the founder of a RTD Coffee called Sunniva Caffe. A natural beverage with health and energy benefits targeting College students and young professionals. Currently we are on 2 Campuses in the North East and in negotiation with Whole foods and a few other small grocers. We are looking for the expertise to take us to the next level in terms of production and marketing. I was attracted to what I saw in the information given online and believe you can help us more than the local co packers we've been assigned to. I am looking forward to this opportunity.

Best,

56.     The DeCiccio Brothers offered Durban a 1% earned and vested share of Defendants' business in exchange for Durban's work and services.

57.     Based on the DeCiccio Brothers' agreement of a 1% earned equity interest in the business, Durban performed work and services for Sunniva Café.

### B. Durban Performed Under the Agreement for a 1% Equity Interest in Defendants' Business

58.     From approximately March 2015 through and including August 2016,  Durban, *inter alia*, advised the DeCiccio Brothers, made strategic business introductions, vetted proposals, and worked on Sunniva Caffe's business strategy, all based on the DeCiccio Brothers agreement of an earned 1% share of Sunniva Caffe.

59.     It is undeniable that Durban worked for and contributed to the early growth of Sunniva Café.

60.     The DeCiccio Brothers listed Durban in the "Sunniva Caffe Business Plan" as a

"**Chief Experience Officer**." (emphasis added).

61.     Furthermore, in numerous email communications, the DeCiccio Brothers refer to Durban and held Durban out to third-parties as a "**partner[]**"and/or and "**advisor**."

62.     The DeCiccio Brothers reneged on the deal that Durban had already performed under.

63.     Durban was never paid in any form for any of the work and/or services performed for Defendants' business.

## C. Durban's Performance of Work and Services for Defendants' Business is Undeniable Based on Unimpeachable Evidence

64.     Durban worked for Defendants from March 2015 through and including August 2016.

65.     The following are examples that demonstrate that Durban worked for Defendants:

66.     In an email dated March 1, 2015, Jordan stated:

Hi Dennis,

I am the founder of a RTD Coffee called Sunniva Caffe. A natural beverage with health and energy benefits targeting College students and young professionals. Currently we are on 2 Campuses in the North East and in negotiation with Whole foods and a few other small grocers. We are looking for the expertise to take us to the next level in terms of production and marketing. I was attracted to what I saw in the information given online and believe you can help us more than the local co packers we've been assigned to. I am looking forward to this opportunity.

Best,

67.     Defendants' business plan titled "Sunniva Caffe Business Plan – Summer 2015 for First Year" described the skills and track record of Defendants' key executives, *to wit,* Durban, as follows:

Dennis has an impressive track record of launching successful consumer brands. He has an extensive network that reaches a seemingly limitless number of platforms including: retail, food services, sports, hospitality, healthcare, e-commerce, private

label and many more. In 2013, Dennis launched innovation.biz, whose goal is to help consumer product companies get created and then get launched. Dennis has specialized in the functional beverage industry since 1989, when he began working with Nestle, in which he was responsible for retail formats, distributor management processes and asset management strategies. From Nestle, he also has expertise in distributor management, asset management, retail channel consulting, web development, trade marketing and more. Most impressively, while at Nestle, Dennis set up a business development team that targeted non-traditional retailers, responsible for $100 million in new business! **Dennis was named the Chief Experience Officer [of Sunniva Café] in May 2015**.

(emphasis added).

68.     In a separate brand presentation deck, Defendants' cited Durban's role as an

"**advisor**" at the creation of the business, as follows:

**Traction (cont'd)**

**June 2015**: Birth of Sunniva through Georgetown Hoyas Summer Launch program, C-Corp in Virginia, secured Attorney, Accountant, and first Advisors, raised $100k from friends & family.

69.     In an email to Durban, dated March 10, 2015, Jordan stated:

Hey Dennis,

Union beverage in Hillside, [NJ] would be a perfect location for Sunniva as a co packer. I was wondering if you could have somebody give them a call on our behalf. It would be greatly appreciated. **I'm getting the impression some of these co-packers don't trust working with college students**. Let me know if you have any suggestions.

Thanks,

(emphasis added).

70.     In another email Durban, dated June 8, 2015, Jordan stated:

Also, do you have any connections with the East Coast Food distributors company? Or any east coast distributors? Our west coast distributor is set for StateWide beverage as of now. Thanks.

71.     In another email to Durban, dated June 28, 2015, Jordan stated:

Hey guys,

Hope you're having a good weekend!

Heres's [*sic*] an update from our friend at Amazon. Check out their link at the bottom, too.

Jake and I are planning for a Wednesday conference call this week if it works for you guys. We know a holiday weekend is coming up and you may be traveling..(We can work out a time for that when Jake sends out the notes tomorrow.)

We have to keep building momentum each week and keep a steady incline of forward progress. I'm excited about the product and the team we have.. **Again, Jake and I are extremely fortunate to have you guys. I know we're going to do something special with this**.

Talk soon,

(emphasis added).

72.     In an email dated February 26, 2016, Jimmy copied Durban on an email to a

potential strategic partner as follows:

Hey [**REDACTED**].

**One of our advisors**, **Dennis Durban** <https://www.linkedin.com/in/akiwest>, is interested in Union Kitchen's model. He is producing a television show for Entrepreneur Magazine that captures interesting young companies in the food and beverage space

He works with companies similar to UK and he would love to connect with you over the phone.

He's also up to speed on the latest Whole Foods/Sunniva news that we discussed yesterday and I believe he has questions in that regard, as well.
I copied Dennis to this message in hopes that the two of you can schedule a phone conversation.

Thanks!

(emphasis added)

73.     In another email dated April 6, 2016, Jordan copied Durban on an email to a third-

party consultant as follows:

[**REDACTED**],

It's nice meeting you. Dennis has told me some great things.

**Dennis has been 1 of our advisors here at Sunniva Caffe since the very beginning.** He says you're a big coffee guy and know the industry inside and out.

I would love to get your take on our brand and our growth plans as we see a great opportunity in the Food Service industry with The Compass group. If you have some time to jump on a call this week, that would be fantastic.

Thanks for the time and talk soon.

Best,

(emphasis added)

74.    Defendants, through Durban's advisory services, now own, operate and/or control a fast-growing consumer goods company headquartered in New York, New York, which currently makes and markets:

a.    Super Coffee – a ready-to-drink, sugar free, organic coffee blended with protein and MT Oil (12oz HDPE Bottle);

b.    Super Creamer – a lactose free, sugar free coffee cream fortified with protein and MCT Oil (25 oz paper carton); and

c.    Super Espresso—sugar free, organic espresso blended with protein and MCT Oil (6 oz can).

75.    Defendants offer a line of beverage products offered under the mark "KITU" which have been on the marketplace since as early as March 2016 under the previous tradename, Sunniva, and are currently available in over 5,000 retail locations across the country from Bristol Farms and 7-11 in Southern California to Walgreens and Whole Foods in New York City. KITU's products are also available online, including at drinksupercoffee.com, Amazon, Peapod, and

jet.com.

76.     In July 2016, after approximately 15 months of working together, and on the eve of a significant capital raise, Defendants breached their obligations to formalize the agreement.

### FIRST CLAIM
### (Breach of Contract)

77.     Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

78.     Plaintiff and The DeCiccio Brothers reached an agreement in March 2015 regarding the terms of their business relationship.

79.     The DeCiccio Brothers offered Durban a 1% earned and vested share of Defendants' business in exchange for Durban's work and services.

80.     Based on the DeCiccio Brothers' agreement of a 1% earned equity interest in the business, Durban performed work and services for Sunniva Café.

81.     In July 2016, after approximately 15 months of working together, and on the eve of a significant capital raise, Defendants breached their obligations to formalize the agreement.

82.     As a direct result of Defendants' breach of their obligations under the oral agreement, Plaintiff was damaged in an amount to be proved at trial.

### SECOND CLAIM
### (Declaratory Judgment)

83.     Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

84.     By reason of the foregoing, Plaintiff is entitled to a declaratory judgment as to the rights and relations of the parties as set forth in the foregoing allegations.

85.     Specifically, Plaintiff is entitled to a declaratory judgment that, through his actions,

Durban is entitled to a 1% share of Defendants' business.

86.     Therefore, Plaintiff is entitled to a declaratory judgment that he is a 1% owner of Defendants' business.

## THIRD CLAIM
### (*Quantum Meruit*)

87.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

88.     As described more fully above, Defendants requested Plaintiff's services to, *inter alia*:

a.      Serve as Sunniva's advisor, and Chief Experience Officer;

b.      Source manufacturing, co-packing and distribution partners;

c.      Source retailer and wholesaler accounts;

d.      Source strategic partnerships with similarly situated brands;

e.      Draft presentation decks;

f.      Leverage network connections in the consumer products industry; and

g.      Engage senior-level consultants and advisors;

89.     Defendants accepted and benefited from the services Plaintiff rendered to Defendants.

90.     The services rendered by Plaintiff had a fair and reasonable value.

91.     Defendants failed to pay for the goods or services rendered.

92.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendants in an amount to be determined at trial.

## FOURTH CLAIM
### (Unjust Enrichment)

93.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

94.     Plaintiff is entitled to be compensated for the services he performed for Defendants.

95.     From March 2015 to August 2016, Plaintiff worked for Defendants

Defendants accepted and benefited from the services Plaintiff rendered to Defendants.

96.     Based upon the representations made by the Individual Defendants, on behalf of all Defendants, Plaintiff reasonably expected to receive compensation for the services rendered to Defendants.

97.     Defendants failed to compensate Plaintiff for such services.

98.     Defendants have been unjustly enriched, to Plaintiff's detriment, by the benefits conferred and services performed by Plaintiff for which he has not been compensated.

99.     The circumstances are such that equity and good conscience require Defendants to make restitution to Plaintiff.

100.    By reason of the foregoing, Plaintiff is entitled to judgment against Defendants in an amount to be determined at trial.

## FIFTH CLAIM
### (NYLL – Unpaid Minimum Wages, N.Y. Stat. § 650 *et seq*.)

101. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

102.    Plaintiff was an employee of Defendants.

103.    Plaintiff was employed by Defendants from March 2015 through and including August 2016.

104.    Defendants did not provide Plaintiff a statement of wages, as required by NYLL 195(3).

105. Defendants did not give any notice to Plaintiff, in English, of his rate of pay,

employer's regular pay day, and such other information as required by NYLL § 195(1).

106. Defendants willfully and intentionally failed to compensate Plaintiff with the applicable minimum hourly wage in violation of the NYLL §650 *et seq*.

107. Defendants have failed to make a good faith effort to comply with the NYLL with respect to compensation of Plaintiff.

108. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, in an amount to be determined at trial, pursuant to the NYLL § 663.

## SIXTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Notices)

109. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

110. The NYLL and the WTPA require employers to provide all employees with a written notice of wage rates at the time of hire.

111. In violation of NYLL §195 (1), Defendants failed to furnish to Plaintiff at the time of hiring, or whenever his rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address, if different; the telephone number of the employer, and anything otherwise required by law.

112. Due to Defendants' violations of NYLL §195 (1), Plaintiff is entitled to recover

his liquidated damages, reasonable attorney's fees and cost and disbursement of the action, pursuant to the NYLL §198 (1-b).

## SEVENTH CLAIM
### (Violation of the Wage Statement Provisions of the NYLL)

113. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

114. With each payment of wages, Defendants failed to provide Plaintiff with a statement listing each of the following the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; the number of regular hours worked; the number of overtime hours worked, as required by the NYLL § 195(3).

115. As a result of Defendant's violation of the WTPA, Plaintiff is entitled to damages of at least $150 per week during which the violations occurred.

## EIGHTH CLAIM
### (Violation of the NYC Charter § 20-929)

116. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

117. The New York City Charter provides that:

    a. Except as otherwise provided by law, the contracted compensation shall be paid to the freelance worker either:

        i. On or before the date such compensation is due under the terms of the contract; or

        ii. If the contract does not specify when the hiring party must pay the contracted compensation or the mechanism by which such date will be determined, no later than 30 days after the completion of the freelance worker's services under the contract.

    b. Once a freelance worker has commenced performance of the services under the

contract, the hiring party shall not require as a condition of timely payment that the freelance worker accept less compensation than the amount of the contracted compensation.

118.   Plaintiffs are entitled to, "[i]n addition to any other damages awarded pursuant to this chapter, a plaintiff who prevails on a claim alleging a violation of section 20-929 is entitled to an award for double damages, injunctive relief and other such remedies as may be appropriate."§ 20-33(b)(3).

119.   Plaintiffs are entitled to unpaid wages, double damages, liquidated damages, injunctive relief and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.   declaring that Defendants have violated the minimum wage provisions of the NYLL and the NYDOL regulations;

b.   declaring that Defendants violated the notice statement pay provisions of the NYLL and WTPA;

c.   declaring that Plaintiff is a 1% owner of Defendants' business.

d.   declaring that Defendants violated § 20-929 of the NYC Charter;

e.   declaring that Defendants are in breach of contract under New York State law;

f.   awarding Plaintiff unpaid minimum wages;

g.   awarding Plaintiff liquidated damages in an amount equal to the total amount of wages found to be due;

h.   awarding unpaid wages under the NYLL;

i.   awarding unpaid wages under the NYC Charter;

j.   awarding restitution under New York State law for *quantum meruit*;

k.   awarding restitution under New York State law for unjust enrichment;

l.   awarding Plaintiff statutory damages as a result of Defendants' breach of the NYC Charter;

m.   awarding Plaintiff statutory damages as a result of Defendants' failure to furnish accurate wage notice pursuant to the NYLL;

n.      awarding Plaintiff pre- and post-judgment interest under the NYLL;

o.      awarding Plaintiff reasonable attorneys' fees and the costs and disbursements of this action; and

p.      Such other relief as this Court deems just and proper.


Dated: New York, New York
       July 28, 2020                    Respectfully submitted,


                              By:  /s/ Joshua Levin-Epstein
                                   Joshua D. Levin-Epstein
                                   Levin-Epstein & Associates, P.C.
                                   420 Lexington Avenue, Suite 2525
                                   New York, NY 10170
                                   Tel: (212) 792-0046
                                   Email: Joshua@levinepstein.com
                                   *Attorneys for Plaintiff*